FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jun 16, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JOSEPH RILEY and SHALEE RILEY, husband and wife; and the marital community comprised thereof; on behalf of minors F.R.; A.R.; L.D-R; and G.W., <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF SPOKANE VALLEY, SPOKANE COUNTY PROSECUTOR LARRY HASKELL, SPOKANE COUNTY PROSECUTOR SHARON HEDLUND, SPOKANE COUNTY SHERIFF'S DEPARTMENT; SHERIFF OZZIE KNEZOVICH; DETECTIVE MARC MELVILLE; JAMIE L. PETERSON, a single person; JOHN/JANE DOE 1-10, <br><br> Defendants. | No.   2:21-cv-00355-SMJ <br><br> **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT** |

Before the Court is Defendant Jamie Peterson's Motion to Dismiss, ECF No. 7, and Plaintiffs' Motion for Leave to File Amended Complaint, ECF No. 8. Having reviewed the relevant record, the Court is fully informed and grants Defendant Peterson's motion to dismiss all claims against him and denies Plaintiffs' motion leave of Court to file an amended complaint.

ORDER – 1

# BACKGROUND[1]

Plaintiff Joseph Riley ("Plaintiff") is a Spokane, Washington resident and owns a local tattoo shop. On the night of December 28, 2022 through the early morning of the next day, Plaintiff was at his residence with his wife and children. ECF Nos. 1 at 5; 1-1 at 2. Meanwhile, at some point during the night of December 28, 2022, Kailyn Mellick, Stephanie Banna, and Daniel Jarman arrived at Ichabod's Bar and Grill in Spokane Valley, Washington. ECF No. 1 at 5; *see also* ECF No. 1-2 at 2. While the three were at Ichabod's, a male approached the group because he recognized Stephanie. *Id.* Stephanie allegedly introduced the male as "Joe" and mentioned to the others that he worked as a tattoo artist.[2] *Id.* The male then joined the group. *Id.*

Eventually, the group decided to leave Ichabod's and go to Kailyn's house. *Id.* While at the house, Kailyn became uncomfortable because Daniel appeared intoxicated and ready to fall asleep, and Kailyn did not want people "crash[ing]" at her house. *Id.* Stephanie then realized she left her jacket at Ichabod's, so the group decided to go back to the bar.

---

[1] Most of the facts detailed in this section come from Plaintiff's complaint and the documents attached thereto. The Court accepts these facts as true for purposes of this Order only.

[2] Stephanie does not recall introducing the man as "Joe." ECF No. 1-10 at 4.

ORDER – 2

Once back at the bar but still in Stephanie's vehicle, the male who Stephanie introduced as Joe "said something to the effect of 'let's just leave Daniel here.'" ECF No. 1-2 at 2. This statement apparently caused an argument between the male and Daniel Jarman, and the two got aggressive with each other and exited the vehicle. *Id.* The male then punched Mr. Jarman in the face, knocking him out. *Id.* Mr. Jarman fell to the ground, and the male leaned over and punched Mr. Jarmen at least a dozen more times.[3] *Id.* Kailyn exited the vehicle and called 911. *Id.*

The male assailant fled the scene before law enforcement arrived. ECF Nos. 1 at 6; 1-6 at 2. Once police arrived, both Kailyn and Stephanie stated that they did not know the male, though they acknowledged they were with him throughout the evening and described him as "a white male wearing a black shirt and jeans," with "brown hair," "around 5'10, and average build." ECF No. 1-26 at 2.

The next day, Kailyn, believing that the male perpetrator was a tattoo artist named Joe, performed an online search on Facebook and pulled up Plaintiff's profile page. ECF No. 1-6 at 2. She looked through the photos visible on his page and believed he was the male who assaulted Mr. Jarman. *Id.* After this, Kailyn called Spokane County Crime Check and reported Plaintiff as the assailant. *Id.*

On January 2, 2020, Spokane County Sheriff Detective Marc Melville drove to the Spokane Valley Mall where Plaintiff maintains the tattoo shop. ECF No. 1-1

---

[3] Daniel Jarman eventually passed away from these injuries. *See* ECF No. 1-7 at 2.

ORDER – 3

at 2. When he arrived, he saw Plaintiff leaving with another person and did not contact him. *Id.* Detective Melville then drove to Plaintiff's house where Plaintiff answered the door. *Id.* Detective Melville informed Plaintiff of the reason for his presence but Plaintiff denied having ever visited Ichabod's. Plaintiff stated that he had been home all night with his wife and children. *Id.* Shalee Riley, Plaintiff's wife, indicated the same. *Id.* Detective Melville called Stephanie requesting a physical description of the assailant. *Id.* Detective Melville determined that "[t]his physical description matched that of [Plaintiff]" and placed Plaintiff under arrest for first degree assault and transported him to the Spokane Public Safety Building for a formal interview. *Id.*

In the weeks following the assault, Detective Melville also interviewed Stephanie and Kailyn, visited Ichabod's to talk to the bartenders and obtain receipts and surveillance footage, and processed Plaintiff's cellular device for location data. ECF Nos. 1-5, 1-7, 1-10. On January 24, 2020, the Spokane Valley Police Department published a press release detailing the assault and naming Plaintiff as the suspect. ECF No. 1-21. Later, a review of Plaintiff's location data "did not reveal he had been present at Ichabod's at the time of the assault on Daniel." ECF No. 1-23 at 2.

On January 28, 2022, Stephanie called Detective Melville and seemed upset. *Id.* Stephanie advised Detective Melville that she had recently been shown a picture

ORDER – 4

of a male named Jamie Peterson, who looked "VERY similar to [Plaintiff]." *Id.* (emphasis in original). Stephanie described a "sinking feeling," as she thought she may have mistaken Jamie for Plaintiff. *Id.* During the conversation, Detective Melville recalled reviewing an Ichabod's receipt from the night of attack in Jamie's name. *Id.*

Detective Melville then contacted and interviewed Jamie, who admitted to being present at Ichabod's on the night of the assault. ECF No. 1-24 at 2. Jamie stated that he did not know anyone by the names of Stephanie or Kailyn and denied involvement in any type of altercation or fight. *Id.* At some point during the interview, Detective Melville noticed that Jamie had a mark from a tattoo that had recently been lasered off. Detective Melville recalled that Stephanie "had specifically mentioned the suspect had a tattoo removed via laser." *Id.* After the interview concluded, Detective Melville called Spokane County Prosecutor Sharon Hedlund and adviser her what he learned about Jamie. ECF No. 1 at 18.

On January 30, 2020, the Spokane County Prosecutor's Office dismissed with prejudice all charges against Plaintiff. ECF No. 1-13. It is unclear whether Jamie Peterson was ever charged for the assault and resulting death.

On December 22, 2021, Plaintiff filed this instant action against City of Spokane Valley, Spokane County Prosecutor Larry Haskall, Spokane County Prosecutor Sharon Hedlund, Spokane County, Spokane County Sheriff's

ORDER – 5

Department, Sheriff Ozzie Knezovich, Detective Marc Melville, Jamie L. Peterson, and John/Jane Doe 1-10. At bottom, Plaintiff alleges that as a result of "false statements, misleading police reports, false probable cause affidavits, and media releases," he was falsely arrested and held out to the public as a violent criminal, causing harm to himself and his family. ECF No. 1 at 18.

Defendant Jamie Peterson now moves to dismiss all claims asserted against him. ECF No. 7. Plaintiff responds that he has adequately stated a claim against Defendant Peterson for common law negligence. ECF No. 9. Plaintiff also requests leave of Court to file an amended complaint asserting additional claims against Defendant Peterson for defamation and false light. ECF No. 8. Defendant Peterson opposes Plaintiff's motion as futile. ECF No. 12.

## LEGAL STANDARD

**A.    Motion to Dismiss**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Federal Rule of Civil Procedure 12(b)(6), the Court must dismiss the complaint if it "fail[s] to state a claim upon which relief can be granted."

In deciding a Rule 12(b)(6) motion, the Court construes the complaint in the light most favorable to the plaintiff and draws all reasonable inferences in the plaintiff's favor. *Ass'n for L.A. Deputy Sheriffs v. County of Los Angeles*, 648 F.3d

ORDER – 6

986, 991 (9th Cir. 2011). Thus, the Court must accept as true all factual allegations contained in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). But the Court may disregard legal conclusions couched as factual allegations. *See id.*

To survive a Rule 12(b)(6) motion, the complaint must contain "*some* viable legal theory" and provide "fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 562 (2007) (internal quotation marks and ellipsis omitted). Thus, the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Facial plausibility exists where the complaint pleads facts permitting a reasonable inference that the defendant is liable to the plaintiff for the misconduct alleged. *Id.* Plausibility does not require probability but demands more than a mere possibility of liability. *Id.* While the complaint need not contain detailed factual allegations, threadbare recitals of a cause of action's elements, supported only by conclusory statements, do not suffice. *Id.* Whether the complaint states a facially plausible claim for relief is a context-specific inquiry requiring the Court to draw from its judicial experience and common sense. *Id.* at 679.

**B.    Leave to Amend**

Federal Rule of Civil Procedure 15(a)(2) directs Courts to "freely give leave" to amend the pleadings "when justice so requires." Although courts must be

ORDER – 7

generous in granting leave to amend, *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011), such leave is not automatic, *see Parish v. Frazier*, 195 F.3d 761, 763 (5th Cir. 1999). Granting leave to amend is within the discretion of the trial court. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). Courts consider several factors, including (1) bad faith on the part of the movant; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; (5) and whether the plaintiff has previously amended the complaint. *Corinthian Colleges*, 655 F.3d at 995. A court may deny leave to amend "if the proposed amendment is futile or would be subject to dismissal." *Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1059 (9th Cir. 2018). An amendment is futile when "no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Miller v. Rykoff–Sexton*, 845 F.2d 209, 214 (9th Cir. 1988).

## DISCUSSION

**A.    Plaintiff has not stated a claim against Defendant Peterson for common law negligence**

Plaintiff argues that he has stated a claim against Defendant Peterson for common law negligence and urges the Court to deny Defendant's motion to dismiss. Under Washington law, "[t]he essential elements of actionable negligence are: (1) the existence of a duty owed to the complaining party; (2) a breach thereof; (3) a resulting injury; and (4) a proximate cause relationship between the claimed breach and the resulting injury." *Hostetler v. Ward*, 704 P.2d 1193, 1198 (Wash. Ct. App.

ORDER – 8

1985). The existence of a duty is a common law element of negligence and "can arise either from common law principles or from a statute or regulation." *Doss v. ITT Rayonier, Inc.*, 803 P.2d 4, 7 (Wash. Ct. App. 1991). "Whether a duty exists in the negligence context is a question of law." *Aba Sheikh v. Choe*, 128 P.3d 574 (Wash. 2006) (en banc).

Plaintiff submits that Defendant Peterson was negligent for falsely allowing others to believe that he was Plaintiff. ECF No. 9 at 6. The Court first notes that Plaintiff's complaint does not allege the existence of a duty, nor does it delineate how Defendant Peterson breached any duty owed to Plaintiff. Beyond this deficiency, and accepting Plaintiff's factual assertions as true, the Court finds that Defendant Peterson did not breach any duty owed to Plaintiff. The Court is not aware of, and Plaintiff has not cited to, any duty under Washington law requiring persons to correct others who falsely believe they are someone else.

And to be sure, even if the Court were to find that Defendant Peterson breached a duty, Plaintiff has not plausibly alleged that any breach was the proximate cause of Plaintiff's damages. To adequately allege proximate cause, a plaintiff must allege both cause in fact and legal cause. *Meyers v. Ferndale Sch. Dist.*, 481 P.3d 1084, 1089 (Wash. 2021). "Legal causation is, among other things, a concept that permits a court for sound policy reasons to limit liability where duty and foreseeability concepts alone indicate liability can arise." *Id.* at 1090. The

ORDER – 9

question then becomes "whether as a matter of policy the connection between the ultimate result and the act or omission of the defendant is too remote or insubstantial to impose liability." *Id.* at 1091.

Accepting Plaintiff's factual assertions as true, Plaintiff's complaint and supporting exhibits show that, at most, Defendant Peterson failed to correct Stephanie when she introduced him to the group as Joe and mentioned that he worked as a tattoo artist.[4] After the assault, law enforcement's arrest of Plaintiff resulted not from any statements made by Defendant Peterson, but from statements by non-parties who falsely identified Plaintiff after having recognized him on Facebook. Without alleging Defendant Peterson had some sort of plan to deceive the group, commit the assault, and then have another person arrested, it is too annenuated to say that Defendant's Peterson's failure to correct his identity to the group at the bar was the proximate cause of Plaintiff's arrest days later. This is particularly so given the amount of intervening events, including Stephanie and Kailyn's statements to law enforcement and Detective Melville's several-day investigation before Plaintiff's arrest.

---

[4] Plaintiff alleges that Defendant Peterson assumed his identity. ECF No. 1 at 21. The facts asserted in the complaint, however, support no more than an allegation that Defendant Peterson failed to correct Stephanie when she indicated his name was Joe and that he worked at tattoo shop. The Court cannot glean from the complaint that Defendant Peterson affirmatively acted to appropriate Plaintiff's identity specifically.

ORDER – 10

Next, Plaintiff argues that he has stated a negligence claim against Defendant Peterson for denying his involvement in the assault when confronted by law enforcement. ECF No. 9 at 6. But Defendant Peterson did not have a duty to implicate himself in a crime. When Detective Melville interviewed Defendant Peterson, Defendant Peterson was considered a suspect in Daniel Jarman's assault and resulting death. *See* ECF No. 1-24 at 2. The Fifth Amendment of the United States Constitution protects against compulsory self-incrimination. U.S. Const. amend. V. The basic purpose of this protection is to preserve "the integrity of a judicial system in which even the guilty are not to be convicted unless the prosecution shoulder the entire load." *Tehan v. United States ex rel. Shott*, 382 U.S. 406, 415 (1966) (internal citations omitted). This, of course, means that persons have no duty to voluntarily admit a crime to law enforcement. Given this longstanding constitutional protection, Defendant Peterson owed no duty to Plaintiff to admit to law enforcement his involvement in the assault. Doing so would contravene the very purpose the framers intended.

In light of the foregoing, the Court finds that Plaintiff has failed to state a claim for common law negligence against Defendant Peterson.

**B.    Plaintiff's proposed amendments are futile**

Plaintiff moves for leave of Court to file an amended complaint adding claims for defamation and false light against Defendant Peterson. ECF No. 8.

ORDER – 11

Defendant Peterson opposes the amendment as futile. ECF No. 12. Having reviewed the proposed amendment, the Court agrees with Defendant that a claim for defamation could not survive a motion to dismiss and therefore denies Plaintiff leave of Court.

Under Washington law, "a prima facie defamation claim requires a plaintiff to prove falsity, an unprivileged communication, fault, and damages." *Seaquist v. Caldier*, 438 P.3d 606, 612 ( Wash. Ct. App. 2019). To prove falsity, "a plaintiff must prove either a statement was false or a statement left a false impression by omitted facts." *Id.* (citing *Mohr v. Grant*, 108 P.3d 768, 774 (Wash. 2005)).

Plaintiff submits that he has stated a claim for "defamation by implication on the part of [Defendant Peterson] because he had multiple opportunities to correct that mistaken assumption that he was [Plaintiff]." ECF No. 13 at 4. Defamation by implication, however, still requires a communication. *See Hoppe v. Hearst Corp.*, 770 P.2d 203, 205 (Wash. Ct. App. 1989) (The threshold requirement in a defamation action is that the defendant must have made a defamatory communication. Unless this requirement is satisfied, there is no actionable defamation claim."). Again, Plaintiff's complaint supports that Defendant Peterson failed to correct the group who believed his name was Joe, but there is no allegation that Defendant Peterson ever communicated anything to the group. Silence alone cannot be a "defamatory communication."

Plaintiff's false light claim fails for a similar reason. "A false light claim arises when someone publicizes a matter that places another in a false light if (a) the false light would be highly offensive to a reasonable person and (b) the actor knew of or recklessly disregarded the falsity of the publication and the false light in which the other would be placed." *Eastwood v. Cascade Broad. Co.*, 722 P.2d 1295, 1297 (Wash. 1986). Plaintiff's proposed amended complaint does not allege that Defendant Peterson made or caused any publication. The only publication at issue in this matter is the press release publicized by Spokane Valley Police Department. This missing element is fatal to Plaintiff's proposed claim.

Plaintiff's proposed amended complaint fails to state a claim for either defamation or false light. Given this, the Court finds that the requested amendment would be futile and will deny leave of Court to file an amended complaint. Because no claims remain against Defendant Peterson, the Court dismisses him as a defendant in this matter.

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendant Peterson's Motion to Dismiss, **ECF No. 7**, is **GRANTED**.
2. Plaintiffs' Motion for Leave to File Amended Complaint, **ECF No. 8**, is **DENIED**.
3. All claims against Defendant Jamie L. Peterson are **DISMISSED WITH PREJUDICE**.

**4.**    The Clerk's Office is directed to **AMEND** the caption as follows:

JOSEPH RILEY and SHALEE RILEY, husband and wife; and the marital community comprised thereof; on behalf of minors F.R.; A.R.; L.D-R; and G.W.,

Plaintiffs,

v.

CITY OF SPOKANE VALLEY, SPOKANE COUNTY PROSECUTOR LARRY HASKELL, SPOKANE COUNTY PROSECUTOR SHARON HEDLUND, SPOKANE COUNTY SHERIFF'S DEPARTMENT; SHERIFF OZZIE KNEZOVICH; DETECTIVE MARC MELVILLE; JOHN/JANE DOE 1-10,

Defendants.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 16th day of June 2022.

_____
SALVADOR MENDOZA, JR.
United States District Judge

ORDER – 14